UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ENCORE CREDIT CORP. and MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC.,

                Defendants/Appellants,

v.

K. JIN LIM, Trustee,

                Plaintiff/Appellee
_____ /

Case No. 07-10762
Bankruptcy Case No. 05-84442

JUDGE PAUL D. BORMAN
UNITED STATES DISTRICT COURT

JUDGE PHILLIP J. SHEFFERLY
UNITED STATES BANKR. COURT

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF TRUSTEE K. JIN LIM

     Now before the Court is an appeal from a February 8, 2007 Order of the Eastern District of Michigan Bankruptcy Court, granting the Bankruptcy Trustee's Motion for Summary Judgment and denying Encore Credit Corporation and Mortgage Electronic Registration Systems, Inc.'s Motion for Summary Judgment. The ruling declared that the mortgage lien of Appellants Encore Credit Corporation and Mortgage Electronic Registration Systems be avoided. This Court held a motion hearing on June 28, 2007. Having considered the entire record, and for the reasons that follow, the Court AFFIRMS the Bankruptcy Court's Order.

**I.    FACTS**

     In August of 2003, Debtor Kimberly M. Young ("Debtor") purchased real property located on Duprey Street, in Detroit, Michigan. (Appellant's Br. 1). In order to secure the purchase money loan, Debtor granted a mortgage on the property to Fremont Investment &

1

Loan. (*Id.*). A liber and page number was assigned by the Wayne County Register of Deeds on October 8, 2003.

Debtor refinanced her outstanding loan with a mortgage in favor of Appellants Encore Credit Corporation and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Appellants") on July 25, 2005. (*Id.*). Debtor used the proceeds from her refinanced mortgage to pay off the purchase money mortgage. (*Id.*). Appellants perfected their interest in the property by recording the mortgage with the Wayne County Register of Deeds on August 11, 2005, a period admittedly outside the ten day safe harbor provision of 11 U.S.C. § 547(e)(2)(A). At the time of Appellants' perfection, § 547(e)(2)(A) stated that a transfer happens at the time the transfer takes effect between the transferor and the transferee, if the transfer is perfected within ten days after such time. Under § 547(e)(2)(B), if perfection is made after the ten days, then the transfer happens at the time of perfection.

On October 14, 2005, Debtor filed a voluntary Chapter 7 bankruptcy petition. The Bankruptcy Trustee ("Appellee") filed a Complaint in Bankruptcy Court on February 8, 2006. (Bankr. Dock. No. 21). The Complaint sought to avoid the refinanced mortgage as a preferential transfer under 11 U.S.C. § 547(b). On February 8, 2007, the Bankruptcy Court granted in part and denied in part the Trustee's Motion for Summary Judgement. The court also denied Encore and MERS' Motion for Summary Judgment.

On the record, Bankruptcy Judge Shefferly stated:

> This matter is before me on cross motions for summary judgment today. . . . It has a fairly familiar fact pattern to it in our district. There are some facts here that are undisputed so I'll recite those. A mortgage existed on the residence of Kimberly Young prior to the time that she filed bankruptcy.
> She refinanced that mortgage. According to the trustee's complaint, the trustee alleges that the date of refinancing was July 22nd, 2005, but on the record

> today I think we narrowed it down and honed in a little bit more when the refinancing actually was accomplished. As I understand it, the parties do not dispute that the loan proceeds were disbursed on July 29, 2005.
>
> A mortgage was granted and although signed on July 2nd, 2005, it was not recorded, so August 11th according to the apparent stipulation of the parties. The mortgage I note has a date stamp on it of August 11th and also assigned a liber and page on August 11th, 2005.
>
> We've had a number of other cases in this district for which there's great controversy about when a mortgage is actually recorded under Michigan law, and what the significance of the liber and page may be relative to other dates including, for example the date of receipt of the document by the Register of Deeds. But that doesn't appear to be the issue in this case.
>
> A copy of the mortgage is attached to the memorandum filed by Encore Mortgage in this case. And I note that it's stamped at the top August 11th, 2005 at liber page assigned August 11th, 2005, and recites in the body that the date of the document is July 22, 2005.
>
> As the parties stipulated here today that mortgage loan was not funded, it wasn't disbursed until July 19, 2005. Assuming that is the date that the mortgage loan proceeds were disbursed, that made the transaction effective then between the debtor and the lender. That the question arises as to whether or not the subsequent perfection of this mortgage which the parties agree did not occur more than ten days after the mortgage took effect between the parties, constitutes a preferential transaction in Ms. Young's bankruptcy.
>
> She filed bankruptcy approximately two months after the mortgage was recorded on October 14, 2005. So to recap the dates here, the mortgage was signed on July 22, it was funded on July 29, and it was recorded at the Wayne County Register of Deeds on August 11, 2005, or in any event more than ten days after it took effect between the lender and the borrower.
>
> And it was a refinance of an existing mortgage, that the parties did not dispute remained of record for some period of time even after Encore Mortgage recorded its mortgage. But the final date as I say is October 14th, 2005.
> The Chapter 7 trustee asserts in the complaint that the mortgage constitutes a transfer, that is a preferential transfer under 547(b) and is therefore voidable by the trustee. The creditor raises many defenses.

(Bankr. Hr'g Tr. 38-40).

Appellants filed a Notice of Appeal on February 21, 2007, and the instant motion was filed on April 2, 2007.

Appellants argue that the Bankruptcy Court erred by refusing to apply the earmarking doctrine defense. They also assert that the Bankruptcy Court erred by bifurcating the transfer

into two separate transactions. In addition, Appellants submit that the Bankruptcy Court failed to assess the transaction as a whole when evaluating the diminution of the estate.

Appellee responds that the earmarking doctrine does not apply because there were two transactions with the transfer and the doctrine only applies to the first transaction. Appellee avers that the transfer of the money for the loan, and the transfer of the debtor's interest in the property, occur at two different times if the security interest is not perfected within ten days of the loan transfer. Thus, according to Appellee, the transfer of funds is covered by the earmarking doctrine and the transfer of security interest is not.

## II. ANALYSIS

### A. Standard of Review

When a bankruptcy court's decision is appealed to the district court, the district court is bound by the Bankruptcy Court's findings of fact unless they are clearly erroneous. Bankr. Rule 8013. This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*. *Rembert v. AT & T Univ. Card Serv.* (*In re Rembert*), 141 F.3d 277, 280 (6th Cir. 1998).

### B. Discussion

The Trustee seeks to avoid the mortgage refinancing transfer as preferential and thus it has the burden of proving all of the elements of an avoidable preference. Section 547(b) empowers the trustee to avoid any transfer of an interest in property that meets the requirements of that section. Section 547(b) of the Bankruptcy Code sets forth the elements of an avoidable preference.

(b) . . . the trustee may avoid any transfer of an interest of the debtor in property–

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if–
>
>> (A) the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.];
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 et seq.].

11 U.S.C. § 547(b). This Court accepts that § 547(b)(5) also requires a diminution of the estate in an avoidable preference action. *See In re Lee*, 339 B.R. 165, 168-69 (E.D. Mich. 2006).

The Bankruptcy Judge found the following on the record:

> In the prefatory language is the first element [of § 547(b)]. And that is that there must be a transfer of an interest of property of the debtor. It's the Court's conclusion that that element is met in this case, that the mortgage constitutes a transfer of an interest. Now when did that transfer occur? According to 547(e)(2) of the Bankruptcy Code, and I'm reading from the pre-BAPCPA Code, a transfer is made on one of three different dates according to three separate sub paragraphs A, B, or C.
> . . . .
> Sub paragraph B of 547(e)(2) says that [the transfer] is made at the time such transfer was perfected if such transfer is perfected after such ten days. That's what occurred in this case. It was perfected after the ten days, which is not disputed, and therefore for purposes of 547(e)(2) the transfer was made at the time it was perfected.
> . . . .
> It's clear to the Court that the transfer here was perfected more than ten days after it was made and therefore under 547(e)(2) is outside the ten day safe harbor

provision.

Before I move off this element, this issue of whether the transfer occurred or not has been the subject of a prior opinion that I rendered in the *In Re: Schmiel* case. Just so the record is – is clear about the Court's reasons for making the finding is [sic] there was a transfer, I'm relying on the analysis in my *In Re: Schmiel* opinion which was recited by both parties in their memoranda. . . . . In that case I discussed this very issue, whether or not the granting of the mortgage constitutes a transfer.

And I concluded, for reasons explained in that opinion that it does. So I'll direct the parties to that opinion and to the subsequent opinion in *In Re: Schmiel* that was an unpublished opinion as well where this issue was further discussed.

But I'm satisfied that there was a transfer of an interest in the debtor's property by virtue of the granting of the mortgage. And I'm satisfied that it occurred on the date it was perfected which was outside the ten day safe harbor provision of 547(e)(2).

Now the creditor argues that the earmarking doctrine applies in a manner that essentially requires the Court to find that there was no transfer that took place because under the earmarking doctrine if property is not property of the debtor and it's earmarked for a creditor, it is not property of the estate, they therefore can't satisfy that prefatory language in 547(b).

Again I discussed this issue at length in the *In Re: Schmiel* case and concluded that after reviewing the case law on the earmarking doctrine, identifying the elements of the earmarking doctrine that have been judicially recognized in our circuit and in other circuits, I concluded that the earmarking doctrine doesn't apply to the facts of this case.

I'm not going to repeat my analysis here today. I am aware that subsequent to the *In Re: Schmiel* decision, Judge Rhodes decided in *In Re: Lee* to apply the same analysis to a similar set of facts, concluded that the earmarking doctrine didn't apply and therefore there was a transfer of the debtor's property and that Judge Rhodes decision was appealed to the United States District Court which on March 6th, 2006 reversed Judge Rhodes in the *In Re: Lee* decision that is found at 339 BR 165. It's a Judge Steeh decision.

They considered the analysis in *In Re: Schmiel* and determined to go in a different direction, rejected that analysis, determined that the earmarking doctrine was applicable. Again, I'm not going to repeat all of the *In Re: Schmiel* analysis other than to note that the earmarking doctrine is not so much in my view an exception, a judicially created exception to the preference law, but rather focuses on the question as to whether or not there is a transfer of the debtor's property. And that's really the analysis that I went through in my opinion.

I respectfully disagree with the decision of Judge Steeh in *In Re: Lee*. I understand it's up on appeal to the 6th Circuit at this time. As the parties in this case both seem to agree and as indicated in Mr. Bovid's memorandum, in a district like ours where there is not a single Bankruptcy Court, or a single District Court Judge, I'm not bound by the decision of Judge Steeh in the *In Re: Lee* case. It's persuasive, it's important to the Court for the reason that it's applicable, but I'm not bound by

it.

And having read it as I've indicated, I respectfully disagree and stick to my analysis in the *In Re: Schmiel* case. So my conclusion for all the reasons explained in *In Re: Schmiel* is applicable to this case is that there was a transfer of interest of the debtor's property. So that first element of 547(b) is in my view met.

. . . .

The final element is 547(b)(5). And that is that the transfer would have enabled the creditor to receive more than such creditor would receive if this were a case under Chapter 7 the transfer had not been made and the creditor received payment of such debt to the extent provided in federal law.

My view is that 547(b)(5) is met in this case. There's no genuine issue of material fact. The creditor contends though that there's an additional element of diminution in the estate that must occur. And there is certainly a discussion of diminution of estate throughout the cases in this circuit and other circuits.

My view of the diminution element though is that it is essentially codified in Section 547(b)(5). And in any event I find that there is a diminution in this case that occurred by virtue of the transfer. If the transfer had been made as I point out Encore would have been an unsecured creditor in this case.

I realize that this result where a mortgage wasn't recorded and therefore perfected within the safe harbor provision of 547(e)(2) can work in some cases a harsh result. And I realize that the argument has been made that the Court's equitable powers allow it and require it, according to the argument, to apply the earmarking doctrine and the diminution concept in a manner that doesn't work this harsh result and that occurs sometimes from a mechanical application of the preference statutes.

But I don't agree that the Court's equitable powers permit it, or certainly do not require us to override the express language of the statute. And I've dealt with this issue somewhat in the *Schmiel* case and in other cases. I know that there are harsh results that can occur in some of these cases.

To some extent that's been ameliorated by BAPCPA's change to 547(e)(2)(A) which extended the ten day safe harbor provision to 30 days going forward. So my suspicion is we won't have this issue arise quite as frequently post-BAPCPA.

But I don't think I have the option to simply conclude that the statute shouldn't be applied expressly as it's written just because the particular circumstance I may believe it to be – or the parties may believe more precisely is there would have been an unfair harsh result at least as Mr. Bovid views the case in his view a windfall for the estate.

It still is a result that is within the control of the creditors to prevent in a given case. Because there's a window period to record a mortgage and in this case there's no suggestion or contention made that he tried to record the mortgage within the ten day safe harbor provision and the county wouldn't record it, would fail to perform its duty. So who controls this risk to prevent this from occurring in the future.

It's the creditors receiving the grant of the interest that requires the protection

of Michigan law. They're the parties in the best position to insure that this doesn't happen, and to prevent it from happening in the future.

And there are other policies that work behind this too, it's not just as some – some parties contended, not in today's argument, but in other cases that – that mechanical application is punitive. There are other policies behind this ten day safe harbor and now 30 day safe harbor too. There's a policy that permeates the entire Code against the creation of secret liens.

And there's a reason for that too. The parties should be able to ascertain what interests there are in the property of a debtor and certainly property of the bankruptcy estate. And in furtherance of that policy, there are some bright lines and some deadlines that are crafted within the Code. And the preference statutes themselves are argued in many cases to be just inherently unfair. There's this 90 day bright line test for non-insiders and there are specific elements that if required – if shown require recovery by the estate of these funds that are paid out to creditors who may still have substantial balances owing by a debtor.

That seems to some creditors who have to repay money when they're still owed a substantial sum of money to be an inherently unfair result. The policy decisions are made in the interest of uniformity of treatment and the policy decisions are reflected in the preference statutes in my view in a mechanical and specific bright line test for – and deadlines for many of these.

I don't think it's my prerogative to disregard those. And to apply the earmarking doctrine in the manner that – that the creditor has asserted in this case, I think just reads 547(e)(2) out of existence and allows creditors who are not diligent, and I'm not suggesting that this creditor wasn't diligent, but I do know that it didn't record it within the safe harbor period. And to read the earmarking provision in the manner in which it's suggested here, I think it encourages a lack of diligence by a creditor because it allows the Court to somehow rescue that creditor from failure to record within the statutorily required time if it wishes to enjoy the safe harbor provision – provision.

Now it may turn out that the 6th Circuit Court of Appeals in the *Lee* decision disagrees with me. And of course I'll be bound by that precedent that's set. But having considered this argument in a number of different cases, I'm still persuaded that that analysis in the first *Schmiel* decision is the right analysis.

And so for all the reasons set forth in that opinion which I adopt here on this record and make part of my findings today, I'm going to grant the summary judgment motion of the plaintiff with respect to Court 1. With respect to Count 2, Mr. Vivian essentially withdrew that on the record here today and I'm going to dismiss that count.

With respect to the creditor's motion for summary judgment for all the reasons I'm granting Mr. Vivian's motion, and finding that there's no genuine issue of material fact, I'm going to deny Mr. Bovid's motion for those reasons.

(Bankr. Hr'g Tr. 40-44, 45-50).

Appellant argues that the earmarking doctrine applies because the estate was not diminished. Appellant submits that "a valid earmarking defense rest squarely on proving that the debtor had no control of the funds at issue and that the transaction, viewed as a whole, did not result in diminution of the debtor's estates." (Appellant's Br. 5). As set forth in 11 U.S.C. § 547(g), the "trustee has the burden of proving the avoidability of a transfer. . ." Regarding this burden, Appellants do not dispute that the Trustee has met his burden as it applies to the elements set forth in 11 U.S.C. § 547(b)(1) through (b)(4). Appellants contend that Appellee must show a diminution of funds, but failed to do so. Appellants also argue that the Bankruptcy Court failed to apply a doctrine that has been developed by the courts as a defense to a preference action: the earmarking doctrine.

1. **Earmarking Doctrine**

The earmarking doctrine addresses the preliminary requirement, under 11 U.S.C. § 547(b), that there be a "transfer of an interest of the debtor in property." If there is no such transfer, then there is no need for further analysis under § 547(b). Under the "earmarking doctrine," funds received by the debtor that are earmarked for another are not actually the debtor's property, so that the re-transfer to the final recipient is not a preference under § 547(b). "If all that occurs in a transfer is the substitution of one creditor for another, no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed." *In re Montgomery*, 983 F.2d 1389, 1395 (6th Cir. 1993).

There are two competing views as to when the earmarking doctrine applies. One view interprets the earmarking doctrine narrowly and thus refuses to extend it to the perfection of

9

security interests. Bankruptcy Judge Shefferly adopted this view in *In re Schmiel*, 319 B.R. 520 (Bankr. E.D. Mich. 2005), and relied on it in his opinion in the instant case. Under this view, a refinancing transaction first involves the transfer of funds to the old creditor, and then separately, the transfer of a security interest from the debtor to the new creditor, which, if belatedly perfected, is effective only upon perfection and does not coincide with the transfer of funds. Advocates argue that when a security interest is perfected outside ten days after the transfer took effect – outside the ten-day safe harbor period – for purposes of § 547(b), the date of the transfer of the mortgage lien to the new creditor is the date of perfection. "The debtor's granting of the new security interest is a second transfer and the date that the transfer becomes effective for preference purposes is controlled by § 547(e). *In re Davis*, 319 B.R. 532, 534 (Bankr. E.D. Mich. 2005) (*Davis II*).

The theory behind this view is that "if a refinancing lender can perfect its security interest whenever it chooses to do so, then § 547(e) would be stripped of its meaning. Section 547(e) protects mortgages for ten days after the transfer of funds. Once the ten-day window closes, a mortgagee is not protected from preference litigation." *In re Messamore*, 250 B.R. 913, 918 (Bankr. S.D. Ill. 2000). Thus, under this view of the earmarking doctrine, when a security interest is perfected outside the ten-day safe harbor period, the doctrine protects the money paid to the old creditor by the new creditor, but not the *security interest* given to the new creditor.

In *In re Schmiel*, the case cited by Bankruptcy Judge Shefferly, the debtors refinanced their mortgage by obtaining a mortgage loan from a new creditor. *Id*. at 522. The new creditor recorded its mortgage outside of the ten-day safe harbor period and the debtors filed their Chapter 7 petition within 90 days of the date the mortgage was recorded. *Id*. The new creditor's

sole argument in its summary judgment motion was that under the earmarking doctrine, there could be no preferential transfer because the loan proceeds were earmarked to pay the antecedent debt owed by the old creditor. *Id*. at 527. The court held that:

> there are two "separate and distinct" transfers at issue in the context of refinancing and granting a new mortgage. Even if the funds paid to [the old creditor] were "earmarked" for [the old creditor], that does not insulate [the new creditor] from the Trustee's action to avoid the transfer of a mortgage lien to it. The earmarking doctrine simply does not apply to this transfer. There were no funds transferred to [the new creditor] that could be earmarked. The granting of the security interest was not done by a third party, but by the Debtors.

*Id*. at 528. Judge Shefferly found that the "ten day safe harbor provision simply would have no meaning if a secured creditor could perfect its interest at any time after the ten days and then depend upon the earmarking doctrine to somehow avoid the operation of the state when its mortgage was later perfected." *Id*. at 529. "Although the debtor's transfer to [old creditor] arose in the context of a refinancing arrangement, [the perfection of the new security interest] did not involve the payment of funds by a third party, or, indeed, the payment of borrowed funds at all. For this reason, the earmarking doctrine has no logical relevance to such transfer." *In re Messamore*, 250 B.R. at 917.

The opposing view of the earmarking doctrine extends the doctrine to the perfection of a security interest where the transaction involves the substitution of one secured loan for another of equal value, which is secured by the same collateral. *See In re Heitkamp*, 137 F.3d 1087, 1089 (8th Cir. 1998) ("The doctrine applies when a security interest is given for funds used to pay secured debts, but not when a security interest is given for funds used to pay an unsecured debt."); *see also In re Ward*, 230 B.R. 115 (B.A.P. 8th Cir. 1999). Under this theory, the earmarking doctrine is applied regardless of whether there is a substantial delay in the perfection

of the new security interest. *See, e.g., In re Heitkamp*, 137 F.3d at 1088 (applying the doctrine even though there was a lapse in perfection of several months).

Regarding cases in this district, Appellant heavily relies on *In re Davis*, 318 B.R. 119 (Bankr. E.D. Mich. 2004) (*Davis I*) and *In re Lee*, 339 B.R. 165 (E.D. Mich. 2006), regarding when the earmarking doctrine applies. In *In re Lee*, Judge Steeh specifically rejected the "two transfer of funds" view of the Bankruptcy Court in this District. *Id.* at 170. Relying on the Eighth Circuit's *In re Heitkamp*, Judge Steeh stated that "the granting of the loan and recording the mortgage are two sides of the same coin, they are one transaction." *Id*.

> To view it any other way would be to elevate form over substance. Conceivably there are scenarios that lend themselves to viewing a loan/mortgage transaction as two distinct events, however, the facts of this case do not.

*Id*.

In *Davis I*, the bankruptcy judge held that the creditor's perfection if its lien was not an avoidable preference and that the funds involved were not the debtors and thus not an interest of the debtor in property. 318 B.R. at 124-5.

Appellee argues that the Eighth Circuit ignored the terminology and framework of § 547(b) in *Heitkamp*. Appellee submits that *Heitkamp* has been severely criticized.[1]

The Sixth Circuit has not directly addressed the issue of whether the earmarking doctrine applies to transfers where one party perfects its interest outside of the safe harbor period. However, the Sixth Circuit has adopted the so-called earmarking doctrine in *In re Montgomery*,

---

[1] Appellant also proffers four cases outside this circuit which support its argument: *In re Lazaraus*, 478 F.3d 12 (1st Cir. 2007); *In re Messamore*, *supra*; *In re Shreves*, 272 B.R. 614 (Bankr. N.W. W. Va. 2001); and *In re Moeri*, 300 B.R. 326 (Bankr. E.D. Wis. 2003). Each of the above cases held that the doctrine only applies to the transfer of the borrowed funds to the original lender, and that under § 547(e), the perfection of the lien secured a debt antecedent to the transfer rather than simultaneous with it.

983 F.2d 1389, 1395 (6th Cir. 2005). The court in *In re Montgomery* stated:

> [T]here is an important exception to the general rule that the use of borrowed funds to discharge the debt constitutes a transfer of property of the debtor: where the borrowed funds have been specifically earmarked by the lender for payment to a designated creditor, there is held to be no transfer of property of the debtor even if the funds pass through the debtor's hands in getting to the selected creditor. *See In re Hartley*, 825 F.2d 1067, 1070; *In re Smith*, 966 F.2d 1527, 1533; *In re Bohlen Enterprises, Ltd.*, 859 F.2d 561, 564-66 (8th Cir. 1988). "The courts have said that even when the lender's new earmarked funds are placed in the debtor's possession before payment to the old creditor, they are not within the debtor's 'control.'" *Bohlen*, 859 F.2d at 565 (citing cases).

*Id.*

Neither *Heitkamp*, nor its progeny, *In re Ward*, *supra*, discuss the effect of § 547(e) on the transfer of the money to the original creditor and on the security interest. Further, *Heitkamp* has been justly criticized because it ignores the statutory language. ". . . [The *Heitkamp* court] failed to distinguish between the transfer of borrowed funds to the original creditor and the subsequent transfer that occurred when the new creditor belatedly perfected its security interest in the debtor's property. The earmarking doctrine, while appropriate to prevent avoidance of the transfer of borrowed funds to the original creditor, was wrongly invoked as a defense for the new creditor's tardy perfection." *In re Messamore*, 250 B.R. at 917-18. Further, while *In re Lee* is persuasive, it is not binding.

This Court finds Appellee's argument convincing. In order to find for Appellants on this issue, the Court would have to strip § 547(e) of its meaning. The Court is not prepared to do so. The safe harbor provision would be meaningless if a secured creditor could perfect its interest at any time and still be able to use the earmarking doctrine. As a result of the security interest being perfected outside the safe harbor period, the debtor's granting of the new security interest becomes effective on the date of perfection for preference purposes, as controlled by § 547(e).

13

> [A]lthough the debtors' transfer to [the new creditor] arose in the context of a refinancing arrangement, it did not involve the payment of funds by a third party or, indeed, the payment of borrowed funds at all. For this reason, the earmarking doctrine has no logical relevance to such transfer. The transfer to [the new creditor] that occurred upon perfection of its lien was separate and distinct from the transfer that occurred when [the original creditor] was paid with borrowed funds, and this transfer was clearly a transfer of the debtors' interest in property, as it depended on the debtors' grant of a security interest to [the new creditor]. The earmarking doctrine, therefore, is inapplicable in the present case to shield the debtors' transfer to [the new creditor] from avoidance as a preference.

*In re Messamore*, 250 B.R. at 917-18.

The Court also finds *In re Lazarus*, 478 F.3d 12 (1st Cir. 2007), a recent case out of the First Circuit, instructive. In that case, the court found that refinancing a mortgage is "not conceptually similar to the guarantor or new creditor cases where it could plausibly be argued that there was merely an agreement between third parties with no property transfer *by* the debtor." *Id.* at 16 (emphasis in original). The court determined that in refinancing there are multiple transactions: the use of proceeds of the loan to pay off the old loan; the release of the mortgage; a new loan to the debtor; and a mortgage from the debtor to a new lender. *Id.*

> Thus, in this case, [the debtor] made a *new* mortgage in favor of the defendant, probably on different terms that the original (or there would have been no benefit to refinancing). then, when the defendant paid off [the original mortgagee's loan], the latter *released* its own mortgage. This did not transfer the old mortgage to the defendant; it merely meant that [the defendant's] mortgage was now first in line rather than a subordinate mortgage. The debtor did not act merely as a bailee with the mortgage passing through her hand from [the original mortgagee] to [the defendant].

*Id.* (emphasis in original). The court also examined the history of the avoidable preference provision. *Id.* at 17. Upon addressing the then-new, 1978 Bankruptcy Code, which reduced the time limit for perfection to ten days, the court opined:

> It is one thing to impose a gloss on the statute, such as the earmarking doctrine, that achieves formal compliance with the statute to rescue a transaction where no

14

prejudice occurred. It is another to make lack of prejudice itself a *substitute* for formal compliance. [Congress intended that section 547 be] self-executing to avoid uncertainty and litigation costs; we will not undo that effort.

*Id*.

Here, Debtor made a new mortgage in favor of Appellants, on different terms than the original, so as to gain the benefit of refinancing. The date of the transfer of money to the old creditor remains the actual date which that transfer occurred. Thus, because Appellants did not perfect within the statutory period, each date must stand on its own, thereby creating two separate transactions under § 547(e). "To enlarge the 10-day deadline for secured interests is to undo Congress' choice." *Id*. at 17. The transfers cannot be viewed as a single transaction, and therefore Appellants are not provided an escape from section 547(b) due to the belatedly-perfected transfer of a security interest. Had Appellants perfected within the 10-day period, there would have been no question that the transfer was not a preference under § 547(b).

Accordingly, the Court finds that that earmarking doctrine does not apply in this case.

### 2. Diminution

Even if the Court found that the earmarking doctrine applied, diminution of an estate is still necessary in order for there to be a preference under § 547(b). *In re Davis*, 319 B.R. 532, 536 (Bankr. E.D. Mich. 2005) (*Davis II*):

> In the context of transfers by third parties, the diminution of estate doctrine asks whether the debtor controlled the property to the extent that he owned it and thus the transfer diminished his estate. Where there is a question as to the debtor's ownership of the money, the court must determine whether the debtor had such an interest in the funds such that a transfer thereof would result in a diminution of the estate. If the transfer diminishes the estate, the other creditors are injured because less remains for them to share. Although the doctrine developed under section 60 of the former Bankruptcy Act, the predecessor to section 547(b), courts have used the doctrine in cases arising under section 547(b) to determine whether the debtor owned the property in question.

15

*In re Hartley*, 825 F.2d 1067, 1070 (1987) (internal citations and quotations omitted). In *In re Biggers*, the court held that:

> [t]he renewal of a lien or security interest is not a new transfer within the meaning of section 547 if it merely continues an existing interest; it does not diminish the collection of assets to be distributed among the general creditors. A "transfer" within the meaning of section 547 "occurs when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interests of the transferee." 11 U.S.C. § 547(e)(1)(B), (2)(B). An exchange that does not take value away from the debtor's estate cannot be a transfer within the reach of section 547.

*In re Biggers*, 249 B.R. 873, 876 (Bankr. M.D. Tenn. 2000). The Sixth Circuit has stated that even if there was a technical preference under § 547(b) and § 547(e)(2) – due to the fact that technically, the refinancing involves a new note and new security interest, and thus the creditor would receive more if the transfer was allowed than it would in a chapter 7 case – the preference is not avoidable unless it resulted in the diminution of the estate. *In re Lowe*, 92 Fed. Appx. 129, 133 (6th Cir. 2003); *see also In re Biggers*, 249 B.R. at 879. "Even where the debtor transfers a security interest in return for the loan, the payment is only a voidable preference to the extent the transaction depleted the debtor's estate. *In re Hartley*, 825 F.2d 1067, 1071 (6th Cir. 1987).

In *In re Lee*, a case similar to the case at bar, Judge Steeh ruled there was no diminution because the value of the estate did not change.[2] 339 B.R. at 169. Judge Steeh held that, following *Biggers*, "the act of refinancing did not deplete estate assets because the original lien was not a preference and a replacement lien neither benefits the debtor or prefers any creditor; it simply replaces a non-preferential secured claim with another secured claim." *Id.*

Conversely, in *In re Schmiel*, 319 B.R. 520 (Bankr. E.D. Mich. 2005), Judge Shapero reached a different conclusion. Judge Shapero found that in the refinance transaction, there were

---

[2] There, the identity of the mortgage holder did not change, unlike in the instant case.

two separate and distinct transfers, and the granting of the security interest to the defendant in the second transfer diminished the bankruptcy estate because it encumbered the property at issue. *Id*. at 528. This resulted in a loss to creditors due the fact that the property could not be administered by the Trustee for the benefit of the creditors. *Id*. ; *see also, In re Ljubic*, 362 B.R. 914, 918 (Bankr. E.D. Wis. 2007) ("The diminution of estate theory does not apply when the security interest in the released collateral has been terminated and the debtor gives new collateral which requires 're-perfection' of the creditor's security interest.");

Appellants argument requires the Court to view the transaction as if there were only one transfer instead of two. Had the second transfer not been made – that is, had Debtor not transferred the new mortgage – Appellants would have been unsecured creditors and would have received a distribution considerably less than that which it would receive if the transfer had been perfected within the safe-harbor period. Due to Appellants' failure to perfect within the safe-harbor period, the transfers are not considered contemporaneous and thus this Court views them separately. The transfer of security for an antecedent debt diminishes the assets available for other creditors.

Accordingly, the Court finds that § 547(b) is met, as there was diminution of the estate.

## III. CONCLUSION

For the reasons stated, the Court AFFIRMS the Bankruptcy Court's Order.

**SO ORDERED**.

s/Paul D. Borman  
PAUL D. BORMAN  
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 31, 2007.

                                                          s/Denise Goodine
                                                          Case Manager